UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO JOSUE DAVILA-GARCIA,<br><br>Petitioner,<br><br>v.<br><br>DAVID VENTURELLA, ACTING DIRECTOR OF U.S. ICE, FIELD OFFICE DIRECTOR, Los Angeles Field Office, Immigration and Customs Enforcement; Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; Todd BLANCHE, Acting U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; Adelanto ICE Processing Center in Adelanto, CA; Warden of Adelanto ICE Processing Center in Adelanto, CA,<br><br>Respondents. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Alberto Josue Davila-Garcia (A# 215-861-388), a thirty-one-year-old native and citizen of Nicaragua, is in the physical custody of U.S. Immigration and Customs Enforcement (ICE) at the Adelanto ICE Processing Center in Adelanto, California. ICE arrested him on October 20, 2026, inside the Los Angeles Asylum Office in Tustin, California, when he appeared for the scheduled interview on his pending application for asylum.

2. Petitioner is not a recent arrival. He came to the United States on November 1, 2018, fleeing political persecution in Nicaragua. The government apprehended him and, on January 29, 2019, released him on a $5,000 cash bond. (Ex. H.). The government released him only after he passed his credible fear interview, meaning an asylum officer found that he had a significant possibility of establishing eligibility for asylum. For the nearly eight years since, he has lived openly in Los Angeles County, litigated his case before the Los Angeles Immigration Court, held work authorization, filed and pursued his asylum application, and became the father of a United States citizen. The Immigration Judge dismissed the removal proceedings without prejudice on August 8, 2023. Nothing about Petitioner has changed since DHS last decided that he could live in the community. What changed is the government's detention policy.

3. Respondents have not identified any lawful basis for the arrest. No removal proceedings are pending against Petitioner, and no charging document has been served on him. To the extent Respondents contend that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), pursuant to ICE's July 8, 2025 policy and *Matter of Yajure*

*Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which holds that immigration judges have no authority to hear bond requests from people who entered without admission, that position is unlawful. Petitioner has had no custody hearing of any kind before a neutral decisionmaker.

4. Respondents' position is foreclosed in this Circuit. The Ninth Circuit has held that noncitizens present without admission who are apprehended in the interior of the United States are detained under 8 U.S.C. § 1226(a), which provides for release on bond or conditional parole, and not under § 1225(b)(2)(A). *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). Independently, holding a man who was previously released by DHS, who has lived under government supervision and in compliance for nearly eight years, and who is pursuing asylum, without any hearing violates the Due Process Clause of the Fifth Amendment.

5. Petitioner therefore asks this Court to order his release or, in the alternative, to order that he receive an individualized bond hearing before a neutral decisionmaker within seven days.

## JURISDICTION

6. Petitioner is in the physical custody of Respondents at the Adelanto ICE Processing Center, Adelanto, California. He alleges that his custody violates the Constitution and laws of the United States.

7. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (the Suspension Clause). The Court may grant relief under 28 U.S.C. § 2241, the

Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

8. Habeas corpus is the vehicle for challenging the lawfulness of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Nothing in 8 U.S.C. §§ 1226(e), 1252(b)(9), or 1252(g) strips this Court of jurisdiction, because Petitioner challenges the statutory and constitutional authority for his detention, not a discretionary custody decision or an order of removal. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018).

**VENUE**

9. Venue lies in the Central District of California, the district of Petitioner's confinement and of his immediate custodian. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493–500 (1973); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 443 (2004). Adelanto lies in San Bernardino County, within this District.

10. Venue is also proper under 28 U.S.C. § 1391(e) because Respondents are officers and agencies of the United States, Petitioner resides in this District, and a substantial part of the events giving rise to the claims occurred here.

**JURISDICTION IS NOT DEFEATED BY A POST-FILING TRANSFER**

11. Jurisdiction, once properly established in this District, is not defeated by a later transfer. In *Ex parte Endo*, 323 U.S. 283, 304–07 (1944), the Supreme Court held that a district court's habeas jurisdiction, once acquired, is not lost when the Government moves the petitioner to another district. *Rumsfeld v. Padilla*, 542 U.S. at 441, reaffirmed that

rule: when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the district court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release. Respondents are on notice that any transfer of Petitioner out of this District after filing will not divest this Court of jurisdiction.

12. That rule is distinct from the administrative venue rule for bond hearings before an immigration judge, which follows the place of detention. 8 C.F.R. § 1003.19(c)(1); *Matter of Vizcaino Aybar*, 29 I. & N. Dec. 736, 737–38 (BIA 2026). Administrative venue is not a limit on this Court's Article III power under § 2241, which vests at filing. *Padilla*, 542 U.S. at 441; *Endo*, 323 U.S. at 304–07. A transfer would also leave Petitioner without a forum in either system, so Petitioner asks that, if Respondents seek to move him outside this District while this Petition is pending, they first be required to move this Court for leave and obtain a ruling.

## EXHAUSTION

13. No statute requires a noncitizen to exhaust administrative remedies before seeking habeas relief from immigration detention under § 2241. Any exhaustion requirement is prudential, and in this Circuit it is excused where the administrative remedy is unavailable, futile, or would cause irreparable harm. *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017); *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

14. Exhaustion would be futile here. No removal proceedings are pending, so there is no immigration court in which to seek a custody redetermination, and under *Matter of Yajure Hurtado* an immigration judge would in any event lack authority to grant one. No

administrative avenue for review of his detention exists. And every day of unlawful detention is an injury that no later administrative ruling can undo.

**REQUIREMENTS OF 28 U.S.C. § 2243**

15. The Court must grant the petition or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

16. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**PARTIES**

17. Petitioner Alberto Josue Davila-Garcia is a native and citizen of Nicaragua who has been in ICE custody since October 20, 2026. ICE has not set bond, and Petitioner has no avenue to obtain review of his custody from an immigration judge.

18. Respondent David Venturella is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity. He is responsible for Petitioner's detention.

19. Respondent Field Office Director, Los Angeles Field Office, is the director of the Los Angeles Field Office of ICE Enforcement and Removal Operations. As such, the Field Office Director is a legal custodian of Petitioner with authority to release him. He or she is sued in his or her official capacity.

20. Respondent Markwayne Mullin is the Secretary of Homeland Security. He is responsible for the administration and enforcement of the Immigration and Nationality Act (INA), oversees ICE, and has ultimate custodial authority over Petitioner. He is sued in his official capacity.

21. Respondent U.S. Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

22. Respondent Todd Blanche is the Acting Attorney General of the United States. He oversees the Department of Justice, of which the Executive Office for Immigration Review (EOIR) is a component. He is sued in his official capacity.

23. Respondent EOIR is the federal agency that operates the immigration courts, including custody redetermination (bond) proceedings.

24. The unnamed Respondent, the Warden of the Adelanto ICE Processing Center, has immediate physical custody of Petitioner and is sued in his or her official capacity.

## STATEMENT OF FACTS

### A. Petitioner Flees Nicaragua and Is Released on Bond

25. Petitioner was born in La Trinidad, Nicaragua, in 1995. As a university student in 2018, he took part in the civic protests against the Ortega-Murillo government, including

the roadblock at La Trinidad on the Pan-American Highway that was violently attacked by police and government-aligned groups on May 30, 2018. He was threatened with death and imprisonment, beaten, and publicly identified on social media by pro-government groups. He left Nicaragua in September 2018. His mother reported the threats to local police on November 5, 2018. After he arrived in the United States, Petitioner expressed his fear of return, and he passed his credible fear interview.

26. Petitioner entered the United States without inspection in Arizona on or about November 1, 2018. He was detained in Arizona, and on January 29, 2019, ICE's Phoenix Field Office released him from custody in Eloy, Arizona, on a $5,000 cash bond. (Ex. H.). DHS released him only after he passed his credible fear interview, in which an asylum officer found that he had a significant possibility of establishing eligibility for asylum. A release on bond is authorized only under 8 U.S.C. § 1226(a). *See* 8 C.F.R. § 236.1(c)(8). DHS therefore determined in 2019 that Petitioner was neither a danger to the community nor a flight risk, and it did so under the very statute that governs his detention now.

**B. Four Years of Non-Detained Removal Proceedings**

27. Petitioner moved to the Los Angeles area and was placed in removal proceedings before the Los Angeles Immigration Court. Represented by counsel, he applied for asylum, withholding of removal, and protection under the Convention Against Torture. Petitioner appeared at each of his hearings.

28. Petitioner has held employment authorization since 2021. DHS approved a renewal on February 18, 2023. (Ex. D.) In July 2023, Petitioner also filed an application

for cancellation of removal (Form EOIR-42B), which was received on July 11, 2023. (Ex. F.)

29. On August 8, 2023, the day set for his individual hearing, the Immigration Judge dismissed the proceedings without prejudice. (Ex. C.) No order of removal has ever been entered against Petitioner.

**C. Petitioner Pursues Asylum Affirmatively**

30. After the dismissal, Petitioner filed his Form I-589 application for asylum with U.S. Citizenship and Immigration Services (USCIS). USCIS received the application on January 2, 2024, under receipt number LGL2490071737. (Ex. A.) He completed biometrics, supplemented the record with declarations and country-conditions and corroborating evidence, and on July 30, 2026, USCIS scheduled his asylum interview for October 20, 2026, at the Los Angeles Asylum Office in Tustin. (Ex. B.) The application remains pending.

31. Petitioner's asylum claim is not speculative. The government released him only after he passed his credible fear interview, meaning an asylum officer found that he has a credible fear of persecution in Nicaragua. It rests on his participation in the 2018 protests, the beatings and death threats he suffered, his identification and targeting by the Sandinista Youth and the Citizen Power Councils (CPC), and contemporaneous corroboration, including his mother's November 2018 police report. Petitioner has every reason to appear for every proceeding and none to flee, because the only alternative to pursuing asylum is return to the country he fled.

**D. Petitioner's Family and Community Ties**

32. Petitioner's daughter, A.D., was born in Whittier, California, in December 2024, and is a United States citizen. Petitioner has lived in Los Angeles County since 2019. Petitioner has been married since October 2024.

**E. Petitioner's Record**

33. Petitioner has no criminal conviction of any kind. In November 2021, law enforcement obtained an emergency protective order protecting Petitioner from his then-spouse, who had stabbed him in the chest. On May 13, 2022, Petitioner was arrested in Los Angeles County and charged with a misdemeanor under California Penal Code § 243(e)(1) in connection with a dispute with the same person. On June 10, 2022, the Superior Court (East Los Angeles) dismissed the charge (No. 2ES00373-01), and arrest relief was granted under California Penal Code § 851.91. (Ex. E, G) That is his only arrest, according to his California Department of Justice record of February 23, 2023. A dismissed charge is not a basis for mandatory detention under any provision of the INA, and to the extent Respondents rely on it, it is exactly the kind of individualized question that a neutral decisionmaker must be allowed to evaluate at a bond hearing.

**F. ICE Arrests Petitioner at His Asylum Interview**

34. On October 20, 2026, Petitioner appeared with counsel at the Los Angeles Asylum Office in Tustin for his 8:30 a.m. interview. After waiting approximately three hours, he was called to the window. When he went through the door, ICE officers arrested him before the interview began. When counsel asked the officers the reason for the arrest,

they did not answer and told counsel to contact the detention center. The interview did not take place.

35. ICE first held Petitioner in Santa Ana, then moved him to Los Angeles, and by October 21, 2026, transferred him to the Adelanto ICE Processing Center, where he remains. As of October 22, 2026, the EOIR automated case information system for Petitioner's A-number shows that his case was dismissed on August 8, 2023, and that there are no future hearings. *See* Ex. C. Neither Petitioner nor his counsel has received a Notice to Appear or any other charging document.

36. ICE has not given Petitioner or his counsel any explanation for re-detaining him after nearly eight years. ICE has not identified any change in Petitioner's circumstances, any new violation, or any evidence that he is a danger or a flight risk. Upon information and belief, ICE is treating Petitioner as subject to mandatory detention under its July 2025 policy, and with no proceedings pending he has no forum in which to ask an immigration judge for bond, which *Matter of Yajure Hurtado* would foreclose in any event.

37. Without relief from this Court, Petitioner faces months or years of detention, separated from his infant daughter, unable to work, and unable to prepare his asylum case with counsel as he could from home.

## LEGAL FRAMEWORK

38. The INA provides three principal forms of detention for noncitizens in removal proceedings. Section 1226 authorizes detention "pending a decision on whether the [noncitizen] is to be removed." 8 U.S.C. § 1226(a). Section 1225(b) governs the

inspection of noncitizens seeking admission at the border and certain recent arrivals. And § 1231 governs detention of those already ordered removed. This case concerns §§ 1226(a) and 1225(b)(2)(A).

39. Under § 1226(a), a noncitizen may be released on bond or conditional parole, and is entitled to a custody hearing before an immigration judge. 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d). Section 1226(c) carves out limited categories of mandatory detention, including for certain noncitizens charged as inadmissible. 8 U.S.C. § 1226(c)(1)(E). The existence of those specific exceptions confirms that, absent them, § 1226(a) governs people charged with inadmissibility who are already in the United States.

40. After Congress enacted IIRIRA in 1996, the agencies explained that noncitizens "present without having been admitted or paroled" would be "eligible for bond and bond redetermination," despite being applicants for admission. 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). For nearly three decades, people who entered without inspection and were later placed in standard removal proceedings received bond hearings unless a criminal ground applied. That practice continued the pre-1996 rule. *See* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (§ 1226(a) "restates" prior law).

41. On July 8, 2025, ICE announced an "Interim Guidance Regarding Detention Authority for Applicants for Admission"[1] directing that anyone present without admission is subject to mandatory detention under § 1225(b)(2)(A), regardless of how long they have lived in the United States. On September 5, 2025, the BIA adopted that position in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

42. Courts across the country have rejected that interpretation. *See, e.g.*, *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).

43. On July 30, 2026, the Ninth Circuit affirmed *Rodriguez Vazquez*, holding that noncitizens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A), and rejecting the Government's reading as not the best reading of the statute. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026) (No. 25-6842). That decision binds this Court.

44. The text compels that result. Section 1226(a) applies by default to anyone detained "pending a decision" in removal proceedings under § 1229a. Section 1225(b), by contrast, is a border-inspection scheme directed at noncitizens "seeking admission." *Jennings*, 583 U.S. at 287 (describing § 1225(b) as applying "at the Nation's borders and

ports of entry”). A person who has lived in the interior for years and is arrested at a government office is not “seeking admission.”

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **Violation of Due Process**

45. Petitioner repeats and incorporates each preceding allegation.

46. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law, and that protection extends to every person in the United States, including noncitizens, whether or not their presence is lawful. *Zadvydas*, 533 U.S. at 693. “Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.” *Id.* at 690. Civil immigration detention must bear a reasonable relation to its purposes of preventing flight and protecting the community, and it requires adequate procedural safeguards. *Id.* at 690–91.

47. Courts evaluate the procedures governing civil detention under the three-part test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which weighs (1) the private interest affected; (2) the risk of erroneous deprivation under the existing procedure and the value of additional safeguards; and (3) the Government’s interest, including the burden of additional procedures. All three factors favor Petitioner. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) (applying *Mathews* to § 1226(a) detention); *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) (same).

48. *First*, Petitioner’s private interest is at its strongest. Freedom from physical detention is “the most elemental of liberty interests.” *Hamdi v. Rumsfeld*, 542 U.S. 507,

529 (2004). Courts in this Circuit and elsewhere recognize a protected liberty interest in remaining free from immigration detention. *See Diaz v. Kaiser*, No. 25-cv-5071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (collecting cases); *Rosado*, 2025 WL 2337099, at *12; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (noncitizen released from immigration detention has a liberty interest in remaining out of custody on bond).

49. That interest is heightened where, as here, the Government itself released the person and he then lived under its supervision for years. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (liberty interest of person released on parole). DHS decided in 2019 that Petitioner could be released on bond. He then spent nearly eight years rebuilding his life in reliance on that decision: he worked under government-issued authorization, became a father, and pursued his claims in the forum DHS chose. His ties to his family and community further strengthen his liberty interest. *See Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025); *Sanchez Alvarez v. Noem*, No. 25-CV-1090, 2025 WL 2942648 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-CV-437, 438, 439, 2025 WL 2688541 (D. Me. Sept. 22, 2025). Petitioner is also pursuing a bona fide claim for protection, and detention impairs his ability to prepare it.

50. *Second*, the risk of erroneous deprivation under the current procedure is extreme because there is no procedure at all. Respondents hold Petitioner without any individualized finding that he is dangerous or likely to flee, and no neutral forum is available to make one. The probable value of a hearing is high. Petitioner has no conviction; he was released on bond in 2019 and complied for nearly eight years; he has a

pending asylum application, work authorization history, a U.S.-citizen daughter, and a stable address; and he appeared, as directed, for his asylum interview. *See* 8 C.F.R. § 1236.1(c)(8); *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). The single dismissed 2022 charge does not change this analysis; a hearing is where its significance would be tested.

51. *Third*, the Government's legitimate interests, ensuring appearance and protecting the community, are fully served by a bond hearing, and the burden of providing one is minimal. The Government has no valid interest in detaining someone without a hearing under a statute the Ninth Circuit has held does not apply to him. Providing a hearing costs less than detention, and DHS's own regulations already provide the procedure. Nor does ICE's interest in re-detention explain why it waited nearly eight years, and then chose to arrest Petitioner at his asylum interview.

52. Petitioner acknowledges *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), which rejected an as-applied due process challenge to the § 1226(a) bond procedures. That case involved a petitioner who had already received an individualized hearing before an immigration judge. Petitioner has received none, and he was re-detained after years of release on bond. Because no process has been afforded, the question presented is whether the Constitution permits detention without any hearing. It does not.

53. At the hearing, due process requires that the Government bear the burden of justifying continued detention by clear and convincing evidence that Petitioner is a danger or a flight risk, and that the immigration judge consider alternatives to detention

and ability to pay. *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011); *Hernandez*, 872 F.3d 976.

54. Petitioner's continued detention without a hearing to determine whether he is a flight risk or a danger to others violates his rights under the Due Process Clause of the Fifth Amendment.

**<u>COUNT II</u>**

**Violation of the Immigration and Nationality Act and Implementing Regulations**

55. Petitioner repeats and incorporates each preceding allegation.

56. Section 1225(b)(2)(A) does not apply to Petitioner. He has resided in the United States since November 2018, was released from DHS custody on bond in 2019, was arrested in the interior of the United States on October 20, 2026, and is not "seeking admission." His detention is governed by 8 U.S.C. § 1226(a). *Rodriguez Vazquez*, 183 F.4th 1160.

57. Because § 1226(a) governs, Petitioner is entitled to release on bond or conditional parole and to a custody redetermination hearing before an immigration judge. 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1003.19, 1236.1(d). Respondents' application of § 1225(b)(2)(A) and *Matter of Yajure Hurtado* to deny him that hearing violates the INA and these regulations.

58. DHS's own conduct confirms the point. In January 2019, DHS released Petitioner on a $5,000 bond (Ex. H), an authority that exists only under § 1226(a), and it has never contended in the years since that he was subject to mandatory detention.

59. Petitioner's re-detention also violates due process. DHS released him in 2019, and he lived in the community under its supervision for nearly eight years. ICE re-detained him at his asylum interview without notice, without any individualized custody

determination, without any changed circumstance, and without a hearing. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019).

60. This District has reached the same conclusion on a classwide basis. In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873 (C.D. Cal.), the court certified a class of noncitizens who entered without inspection and are not subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), and entered final judgment declaring that class members are detained under § 1226(a), not § 1225(b)(2), and are entitled to consideration for release on bond and a custody redetermination hearing. 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Petitioner, who entered without inspection and is not detained under any of the excluded provisions, falls within that class.

61. In the alternative, no provision of the INA authorizes Petitioner's detention at all. Section 1226(a) permits arrest and detention only "pending a decision on whether the [noncitizen] is to be removed," and Petitioner's removal proceedings were dismissed on August 8, 2023. No new proceedings have been commenced. Section 1225(b)(2)(A) cannot apply either, because Petitioner is not "seeking admission" and no examining officer has determined that he is not clearly and beyond a doubt entitled to be admitted. Detention with no pending proceedings and no statutory authority violates the INA.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays that this Court:

a. Assume jurisdiction over this matter;

b. Issue an Order to Show Cause directing Respondents to show cause within three days why the Petition should not be granted, and set a hearing within five days of the return, as required by 28 U.S.C. § 2243;

c. Issue a temporary restraining order providing that Petitioner shall not be transferred outside the Central District of California while this Petition is pending, unless Respondents first move this Court for leave and the Court rules on that motion;

d. Issue a Writ of Habeas Corpus requiring Respondents to release Petitioner immediately, or in the alternative to provide him an individualized bond hearing under 8 U.S.C. § 1226(a) within seven days, before an Immigration Judge or, if no immigration court can hear it, before this Court, at which Respondents bear the burden of justifying continued detention by clear and convincing evidence of danger or flight risk;

e. Declare that Petitioner's detention without an individualized custody hearing and without pending proceedings violates the Due Process Clause of the Fifth Amendment and the INA;

f. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and on any other basis justified under law; and

g. Grant such other and further relief as the Court deems just and proper.

DATED this 23rd day of October, 2026.

*/s/ Cynthia Bautista*
Cynthia Bautista
Attorney for Petitioner
Bautista Immigration Law, P.C.
1227 Laurel Street
San Carlos, CA 94070
Office: (650) 674-6070
Cell: (415) 936-6730
Email: cbautista@bautista-law.com

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of Petitioner because his current detention makes him unable to submit one on his own behalf. I am Petitioner's counsel. On information and belief, based on my review of Petitioner's immigration file and communications with Petitioner and his family, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

*/s/ Cynthia Bautista*
Cynthia Bautista
Attorney for Petitioner
Dated: October 23, 2026

**CERTIFICATE OF SERVICE**

I certify that on October 23, 2026, I will cause true and correct copies of this Petition for Writ of Habeas Corpus and its exhibits to be served on the United States Attorney's Office for the Central District of California (Civil Process Clerk), the Attorney General of the United States, and Respondents, in the manner required by the Court's rules.

*/s/ Cynthia Bautista*
Cynthia Bautista
Attorney for Petitioner
Dated: October 23, 2026

## INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit A | USCIS Form I-797C receipt notice, Form I-589 (received Jan. 2, 2024; Receipt No. LGL2490071737) |
| Exhibit B | USCIS asylum interview notice dated July 30, 2026 (interview Oct. 20, 2026, Los Angeles Asylum Office, Tustin) |
| Exhibit C | Order of the Immigration Judge, Los Angeles Immigration Court, dismissing proceedings without prejudice (Aug. 8, 2023) |
| Exhibit D | Form I-765 approval notice (Feb. 18, 2023) |
| Exhibit E | California Department of Justice criminal history response (Feb. 23, 2023) (redacted per Fed. R. Civ. P. 5.2) |
| Exhibit F | Form I-797C receipt notice, Form EOIR-42B (received July 11, 2023) |
| Exhibit G | California Emergency Protective Order, Form EPO-001 (November 2021) |
| Exhibit H | Form I-830, Notice to EOIR: alien Address (Jan. 29, 2019) |